Daniel Bonnett (AZ #014127)
Mirra L. Carrier (AZ #038053)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
mcarrier@martinbonnett.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Estaban Flemons, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Phoenix Union High School District; Governing Board of the Phoenix Union High School District; Chad E. Gestson, in his individual and official capacity, and Jane Doe Gestson; Thea Andrade, in her individual and official capacity, and John Doe Andrade; Juvenal Lopez, in his individual and official capacity, and Jane Doe Lopez; John Biera, in his individual and official capacity, and Jane Doe Biera; Manuel Silvas, in his individual and official capacity, and Jane Doe Silvas, Deana Williams, in her individual and official capacity, and John Doe Williams; Laura Telles, in her individual and official capacity, and John Doe Telles; and Michael Gard, in his individual and official capacity, and Jane Doe Gard, | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

This is an action for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1983, the First Amendment and Fourteenth Amendments to the United States Constitution, and Article 2, Section 5, & 6 of the Arizona Constitution.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1343 and 42 U.S.C. §§ 1983 & 1988 as this is a civil action arising under the laws of the United States for violations of Plaintiff's civil rights. The Court also has supplemental jurisdiction over Plaintiff's claims under the Arizona Constitution.

2. This Court has personal jurisdiction over the Defendants, Phoenix Union High School District ("Phoenix Union" or "PXU"); Governing Board of Phoenix Union High School District ("PXU Board" or "Board") and Defendants Chad E. Gestson, Thea Andrade, Juvenal Lopez, John Biera, Manuel Silvas, Deana Williams, Laura Telles, and Michael Gard, individually, and in their respective official capacities as alleged herein.

3. Defendant Phoenix Union is a political body and governmental entity located within Maricopa County, Arizona and is organized for the purpose of administration, support, and maintenance of certain public schools in Maricopa County. It may be sued pursuant to A.R.S. §§ 15-101(23), 15-441, *et seq.*, and 12-821.01.

4. Defendant PXU Board is a body organized for the government and management of schools within Phoenix Union, and as such, may be sued pursuant to A.R.S. §§ 15-101(14), 15-321 through 350, and 12-821.01.

5. Upon information and belief, Defendants Chad E. Gestson, Thea Andrade, Juvenal Lopez, John Biera, Manuel Silvas, Deana Williams, Laura Telles, and Michael Gard are residents of and domiciled in Maricopa County, Arizona.

6. Venue is proper under 28 U.S.C. § 1391(b). The Defendants are physically present and reside in Maricopa County, Arizona. All of the acts and/or omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

7. Plaintiff, Estaban Flemons ("Plaintiff" or "Mr. Flemons"), is a resident of

Maricopa County, Arizona. At all times relevant, Plaintiff was and remains employed by PXU as a certified teacher and was an "employee" of Defendant PXU. From the 2019-2020 academic year to the 2022-2023 academic year, Mr. Flemons was the Vice President of the Classroom Teachers' Association ("CTA"), a local chapter of the Arizona Education Association ("AEA"), the National Education Association ("NEA"), and the National Council of Urban Education Associations ("NCUEA"). In March 2023, Mr. Flemons was elected to serve as President of the CTA for the 2023-2024 and 2024-2025 academic years. Plaintiff has standing to bring this suit. CTA is a labor organization within the meaning or Ariz. Rev. Stat. § 23-1301.

8. Defendant Phoenix Union is a School District within the meaning of Ariz. Rev. Stat., Title 15. Pursuant to Ariz. Rev. Stat. § 15-101, Phoenix Union is organized for the purpose of the administration, support and maintenance of the public schools within the territory boundaries of Phoenix Union and its governing board can sue and be sued in the name of Defendant PXU as alleged herein pursuant to Ariz. Rev. Stat. §§ 15-326 & 15-441(B).

9. At all times relevant, Defendant Chad E. Gestson ("Defendant Gestson" or "Gestson") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Superintendent of PXU, and as such, was a public official. Upon information and belief, Defendant Gestson resigned from his role of Superintendent at the conclusion of the 2022-2023 academic year. During his time as Superintendent, Defendant Gestson exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Gestson also acted in his individual capacity and outside the course and scope of his position as PXU Superintendent.

Alternatively, Defendant Gestson is alleged to have acted within the course and scope of his employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, Jane Doe Gestson may be the spouse of Defendant Gestson and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Gestson is married.

10.     At all times relevant, Defendant Thea Andrade ("Defendant Andrade" or "Andrade") was and is a resident of Maricopa County, Arizona and, at relevant times, was employed by Defendant PXU as the Interim Superintendent of PXU after Defendant Gestson resigned, and is currently employed by Defendant PXU as the Superintendent of PXU, and as such, was and is a public official. Defendant Andrade exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Andrade also acted in her individual capacity and outside the course and scope of her position as PXU Interim Superintendent. Alternatively, Defendant Andrade is alleged to have acted within the course and scope of her employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, John Doe Andrade may be the spouse of Defendant Andrade and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Andrade is married.

11.     At all times relevant, Defendant Juvenal Lopez ("Defendant Lopez" or

"Lopez") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Chief Development Officer of PXU, and as such, was and is a public official. Defendant Lopez exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Lopez also acted in his individual capacity and outside the course and scope of his position as PXU Chief Development Officer. Alternatively, Defendant Lopez is alleged to have acted within the course and scope of his employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, Jane Doe Lopez may be the spouse of Defendant Lopez and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Lopez is married.

12. At all times relevant, Defendant John Biera ("Defendant Biera" or "Biera") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Executive Director of Leadership of PXU, and as such, was and is a public official. Defendant Biera exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Biera also acted in his individual capacity and outside the course and scope of his position as PXU Executive Director of

Leadership. Alternatively, Defendant Biera is alleged to have acted within the course and scope of his employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, Jane Doe Biera may be the spouse of Defendant Biera and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Biera is married.

13. At all times relevant, Defendant Manuel Silvas ("Defendant Silvas" or "Silvas") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Executive Director of Talent of PXU, and as such, was and is a public official. Defendant Silvas exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Silvas also acted in his individual capacity and outside the course and scope of his position as PXU Executive Director of Talent. Alternatively, Defendant Silvas is alleged to have acted within the course and scope of his employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, Jane Doe Silvas may be the spouse of Defendant Silvas and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Silvas is married.

14. At all times relevant, Defendant Deana Williams ("Defendant Williams" or "Williams") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Director for Certified Personnel of PXU, and as

5

such, was and is a public official. Defendant Williams exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Williams also acted in her individual capacity and outside the course and scope of her position as PXU Director for Certified Personnel. Alternatively, Defendant Williams is alleged to have acted within the course and scope of her employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, John Doe Williams may be the spouse of Defendant Williams and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Williams is married.

15.  At all times relevant, Defendant Laura Telles ("Defendant Telles" or "Telles") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU, first as Executive Director of Technology and Logistics, and currently as the Chief Achievement Officer of PXU, and as such, was and is a public official. Defendant Telles exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Telles also acted in her individual capacity and outside the course and scope of her position as PXU Executive Director of Technology and

Logistics. Alternatively, Defendant Telles is alleged to have acted within the course and scope of her employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, John Doe Telles may be the spouse of Defendant Telles and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Telles is married.

16. At all times relevant, Defendant Michael Gard ("Defendant Gard" or "Gard") was and is a resident of Maricopa County, Arizona and, at all times relevant, was employed by Defendant PXU as the Talent Director of PXU, and as such, was and is a public official. Defendant Gard exercised direct and/or indirect supervisory authority over Plaintiff and over other PXU employees within the District, and was directly or indirectly involved in one or more decisions affecting Plaintiff's employment status as alleged herein including, but not limited to, decisions regarding the benefits, privileges, terms and conditions of Plaintiff's employment with PXU, including the imposition of disciplinary measures against Plaintiff. Additionally, with regard to the alleged Constitutional violations stated herein, Defendant Gard also acted in his individual capacity and outside the course and scope of his position as PXU Director of Talent. Alternatively, Defendant Gard is alleged to have acted within the course and scope of his employment and in concert with one or more of the other named Defendants, while under color of state law and as an agent for Defendant PXU in making decisions that have resulted in a violation of Plaintiff's First and Fourteenth Amendment rights and other state and federal rights as alleged herein. Upon information, Jane Doe Gard may be the spouse of Defendant Gard and is named as a nominal Defendant solely for the purpose of Arizona's community property laws if Defendant Gard is married.

**FACTUAL ALLEGATIONS**

**Background**

17. In or around 2003, Mr. Flemons began working for Defendant PXU. Mr.

Flemons began working for PXU as a certified science teacher assigned to North High School in 2003 and remained in that position until 2015. From 2015 to 2023, Mr. Flemons worked as the International Baccalaureate Coordinator at North High School. He remained in that position until he began serving as President of the CTA in 2023.

18. Mr. Flemons has been an active member of the AEA, NEA, and CTA since approximately August 2003. He has previously served as CTA Unit Chair before he was elected as Vice President of the CTA in March 2019, a position he held for the 2019-2020, 2020-2021, 2021-2022, and 2022-2023 academic years which was known by Defendants. On March 23, 2023, he was elected to serve as President of the CTA for the 2023-2024 and 2024-2025 academic years.

19. On August 30, 2022, the District held a semi-annual Principal-Unit Chair Summit ("8/30/22 Summit) between the CTA Executive Board and PXU principals and administrators. The CTA Executive Board consists of the CTA President, Vice President, Secretary, Treasurer, and "Unit Chairs" who represent schools or groupings of schools within the District.

20. Beginning more than a year before the 8/30/22 Summit, the CTA Executive Board, acting through its then-President April Coleman ("Dr. Coleman"), submitted 6 complaints pursuant to the Certified Professional Agreement and the District Policy Manual and Administrative Regulations regarding the behavior of one PXU Principal, Mr. Eric Kemp ("Mr. Kemp"). At all relevant times, Mr. Kemp was the Principal of Linda Abril Educational Academy ("LAEA"). In addition, Dr. Coleman, acting as an individual, filed 6 additional complaints and/or grievances pursuant to the Certified Professional Agreement regarding Mr. Kemp's behavior.

21. The six complaints filed by the CTA Executive Board were filed on August 26, 2021, March 17, 2022, April 7, 2022, April 14, 2022, June 1, 2022, August 4, 2022, and had not been resolved at the time of the 8/30/22 Summit.

22. The CTA Executive Board complaints against Mr. Kemp included the following: Mr. Kemp behaved in a disruptive manner and failed to work collaboratively

8

with his assigned CTA Unit Chair at two earlier Principal-Unit Chair Summits in August 2021 and March 2022, Mr. Kemp inappropriately cited language from the CTA Certified Professional Agreement in two separate disciplinary letters to employees, Mr. Kemp failed to include his assigned CTA Unit Chair when scheduling hiring interviews as required by the Certified Professional Agreement, and Mr. Kemp incorrectly informed an external candidate that he could not hire her because CTA had said that he could not.

23. Dr. Coleman, CTA President at the time, acting on behalf of the CTA Executive Board and in collaboration with Plaintiff, filed these six complaints as matters of public concern and in furtherance of the associational rights of the CTA. As a PXU administrator, Mr. Kemp's behavior and attitude toward CTA interfered with the associational rights of CTA as well as its relations with other PXU administrators, staff, and students.

24. The CTA Executive Board received a formal response to only the August 26, 2021 complaint. The CTA Executive Board, acting through Dr. Coleman, appealed the response because it considered that complaint unresolved.

25. The CTA Executive Board did not receive a notice of resolution, or even an acknowledgement, of complaints dated March 17, 2022, April 7, 2022, April 14, 2022, June 1, 2022, and the CTA Executive Board only received an acknowledgment that the August 4, 2022 was received. Furthermore, the Unit Chairs were not parties to the separate complaints or grievances that were filed by Dr. Coleman as an individual, and therefore had no direct knowledge of them and whether or not they had been resolved.

26. Dr. Coleman informed District leadership on at least four occasions prior to the 8/30/22 Summit that the members of the CTA Executive Board of which she and Plaintiff were members, as President and Vice-President, believed it would be unable to work collaboratively with Mr. Kemp at the 8/30/22 Summit given the nature of the six unresolved complaints filed by the CTA Executive Board, and that they would not participate in the meeting if Mr. Kemp attended for the reason they believed it would be disruptive, nonproductive and divisive to future labor/management relations between CTA

9

and the members it represents, on the one hand, and PXU principals and administrators. When Mr. Kemp did appear at the 8/30/22 Summit, the CTA Executive Board made the decision that the meeting was, in fact, counter-productive and would be disrupted due to Mr. Kemp's presence and in disregard of the CTA's stated concerns. Defendant Lopez decided to end the meeting and directed Defendant Biera to announce a break which would give the Executive Board members time to leave the room.

27. Given that Mr. Kemp had a demonstrated history of disruptive behavior during the two prior Principal/Unit Chair Summits which Dr. Coleman and the CTA Executive Board had made known, and as discussed above, the complaints stemming from these prior events (and others) had not yet been resolved, the CTA Executive Board members, including Plaintiff, reasonably believed that attending the 8/30/22 Summit with Mr. Kemp present would be futile, counter-productive and in complete disregard of the concerns CTA had expressed to District.

28. Out of respect for the time and planning required for the 8/30/22 Summit, Dr. Coleman, in her capacity as CTA President, made this known to Defendant Biera on two occasions during planning meetings by indicating that CTA members would not participate in a meeting with Mr. Kemp. Both Defendant Biera and Defendant Silvas then separately telephoned Dr. Coleman the day before the 8/30/22 Summit to inquire about rumors of a "CTA walk-out," and Dr. Coleman again reiterated to both of them that CTA would not participate in a meeting with Mr. Kemp present for reasons previously explained to them.

29. In total, Dr. Coleman communicated on no less than four separate occasions to District leadership prior to the 8/30/22 Summit that the CTA Executive Board members collectively believed that they would be unable to work collaboratively in an environment with a principal against whom they had six open and unresolved complaints pending that had not been addressed and, in some instance, even acknowledged.

30. At that point, neither Defendant Biera nor Defendant Silvas indicated that Mr. Kemp would attend the meeting. Based on receiving no information to the contrary,

the CTA Executive Board members, including Plaintiff, reasonably assumed that Mr. Kemp would not be attending. Upon information and belief, had Dr. Coleman, Mr. Flemons, or any CTA Executive Board member been informed in advance that Mr. Kemp would be attending, they would have asked Defendant Biera to postpone the meeting.

31. The decision to leave the 8/30/22 Summit was made by the CTA Executive Board as a whole, including Plaintiff, and was not directed or mandated by Dr. Coleman or Mr. Flemons, but in association with one another. Out of respect for the other participants, the CTA Executive Board waited until Defendant Lopez asked Defendant Biera to call for a break in the meeting, at which point they gathered their belongings in an orderly manner and left. Upon information and belief, the Unit Chairs then either returned to their teaching duties for the day or took a personal day to which they were entitled. Shortly thereafter, Dr. Coleman and Mr. Flemons filed a complaint (the seventh) on behalf of the CTA Executive Board against Defendant Biera.

**PXU Investigation and Discipline**

32. As a result of the CTA Executive Board's decision to leave the meeting, the District initiated a months-long investigation into Dr. Coleman, Mr. Flemons, personally, and the CTA Executive Board which significantly disrupted the CTA's internal operations and leadership, as well as interfered with its ability to efficiently represent CTA members.

33. Defendant Lopez placed Dr. Coleman on administrative leave from December 16, 2022, to February 10, 2023. As part of this leave, Dr. Coleman was under restrictions unilaterally imposed by the District. These included, *inter alia*, a directive "not to contact or communicate with any Phoenix Union High School District student or employee." This directive served as a prior restraint and restriction on Dr. Coleman's speech and associational rights and interfered with her ability to effectively function as CTA President, an elected position she held at the time.

34. Mr. Flemons was therefore abruptly forced to become the *de facto* leader of the CTA for nearly two months and was placed in an untenable position of faithfully serving CTA's members while simultaneously being unilaterally imposed by the District

to maintain confidentiality of the information to which he was privy as Dr. Coleman's representative regarding her status as being on administrative leave and the reasons therefor. Plaintiff was also faced with the added pressure and responsibilities of serving as *de facto* CTA President for nearly two months while simultaneously remaining in his other full-time positions, effectively serving in two full-time positions while only receiving compensation for one. Furthermore, he was effectively precluded from fully apprising the CTA Executive Board and CTA members of the reasons for Dr. Coleman's status.

35. On February 9, 2023, nearly 6 months after the 8/30/22 Summit, Defendant Williams imposed a seven-day suspension without pay on Mr. Flemons (hereinafter referred to as the "Disciplinary Letter"). The Disciplinary Letter falsely states, *inter alia*, that Mr. Flemons "misled the members of the CTA Executive Board" about the resolution of "multiple complaints and grievances," and "exaggerated the significance of the various complaints and grievances." Mr. Flemons timely appealed the imposition of discipline, but his appeal was denied by Defendant Telles, who was then Executive Director of Technology and Logistics, on February 28, 2023.

36. As a result, and by virtue of the foregoing, Defendants interfered with and chilled the current and future exercise of Plaintiff's free speech and associational rights resulting in lost wages and benefits and other economic harms, injury to reputation and also caused Plaintiff to experience emotional distress and mental anguish entitling him to economic and non-economic monetary damages and equitable relief.

37. Plaintiff timely served each Defendant with a statutory Notice of Claim dated June 13, 2023 in accordance with Arizona Revised Statute § 12-821.01.

**COUNT I**
**(Violation of First Amendment – Freedom of Speech and Association)**
**(All Defendants)**

38. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though set forth fully herein.

39. The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

40. The First Amendment includes the right of free speech and association including, but not limited to, the right of Plaintiff to freely associate with the CTA and AEA and their members without fear of unlawful interference, retaliation or without being discriminated against for exercising his right of association with his union and advocating on matters of public concern through his union membership and advocacy.

41. 42 U.S.C. § 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42. Under the First Amendment to the United States Constitution, a citizen has the right to engage in free speech, expression and to associate with labor organizations and unions of their choice.

43. Each of the named Defendants, while acting under color of state law and in their individual capacities while outside the course and scope of their official duties, interfered with Plaintiff's rights under the United States Constitution to engage in free speech, expression, and association as alleged herein.

44. Alternatively, each Defendant while acting in their official capacities as representatives, officers, and employees of Defendant PXU and under color of law, intentionally deprived Plaintiff of his Constitutional right to engage in protected free speech, expression, and association.

45. Defendants unlawfully retaliated against Plaintiff for the exercise of his First Amendment rights as set forth herein including, but not limited to, denying or otherwise

failing to respond to the grievances of the CTA Executive Board, and imposing a seven-day suspension without pay on Mr. Flemons because of his union association and related expressive activities.

46. Defendants acted in a manner intended to interfere with and/or prevent Plaintiff from exercising him Constitutional rights and then retaliated against him because he exercised these rights of association and free expression and to chill further association and related expressive activities in order to avoid future disciplinary action.

47. As a direct and proximate consequence of these violations by Defendants, Plaintiff has been damaged and will continue to be damaged, financially, and economically, and therefore, Defendants are liable for Plaintiff's lost salary and benefits and future pay and benefits, in an amount not yet fully ascertained, plus prejudgment interest thereon.

48. As a direct and proximate consequence of the foregoing violations by Defendants, Plaintiff is entitled to recover other compensatory damages including but not limited to injury to reputation, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained plus prejudgment interest thereon.

49. In addition, and by virtue of the foregoing, Plaintiff is entitled to declaratory, injunctive and other equitable relief including, but not limited to, enjoining Defendants from future interference with and retaliation for having exercised his First Amendment speech and associational rights.

50. By virtue of the foregoing, Plaintiff is also entitled to recover his attorneys' fees and costs pursuant to 42 U.S.C.A. § 1988 for bringing this action.

**COUNT II**
**(Violation of Article 2, Section 5 & 6 of the Arizona Constitution –**
**Freedom of Speech and Association)**
**(All Defendants)**

51. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though set forth fully herein.

52. Article 2, Section 5 of the Arizona Constitution provides that, "[th]e right of

14

petition, and of the people peaceably to assemble for the common good, shall never be abridged."

53. Article 2, Section 6 of the Arizona Constitution provides that, "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

54. Each of the named Defendants, while acting under color of state law and in their individual capacities while outside the course and scope of their official duties, interfered with Plaintiff's rights under the Arizona Constitution to engage in free speech, expression, and association as alleged herein.

55. Alternatively, each Defendant while acting in their official capacities as representatives, officers, and employees of Defendant PXU and under color of law, intentionally deprived Plaintiff of his Arizona Constitutional right to engage in protected free speech, expression, and association.

56. Defendants unlawfully retaliated against Plaintiff for the exercise of his Arizona Constitutional rights as set forth herein including, but not limited to, denying or otherwise failing to respond to the grievances of the CTA Executive Board, and imposing a seven-day suspension without pay on Mr. Flemons because of his union association and related expressive activities.

57. Defendants acted in a manner intended to interfere with and/or prevent Plaintiff from exercising his Arizona Constitutional rights and then retaliated against him because he exercised these rights of association and free expression and to chill further association and related expressive activities in order to avoid future disciplinary action.

58. As a direct and proximate consequence of these violations by Defendants, Plaintiff has been damaged and will continue to be damaged, financially, and economically, and therefore, Defendants are liable for Plaintiff's lost salary and benefits and future pay and benefits, in an amount not yet fully ascertained, plus prejudgment interest thereon.

59. As a direct and proximate consequence of the foregoing violations by Defendants, Plaintiff is entitled to recover other compensatory damages including but not

limited to injury to reputation, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained plus prejudgment interest thereon.

60. In addition, and by virtue of the foregoing, Plaintiff is entitled to declaratory, injunctive and other equitable relief including, but not limited to, enjoining Defendants from future interference with and retaliation for having exercised his speech and associational rights as guaranteed by the Arizona Constitution.

**WHEREFORE**, Plaintiff requests the following relief:

A. A declaration that Defendants have violated the First Amendment to the United States Constitution;

B. A declaration that Defendants have violated Article 2, Sections 5 & 6 of the Arizona Constitution;

C. A declaration that Defendants have violated 42 U.S.C.A. § 1983;

D. Judgment in favor of Plaintiff and against Defendants, jointly and severally, together with an award of compensatory damages as permitted by law and in the amounts supported by the evidence;

E. Temporary and permanent injunctive relief and such other equitable relief as permitted by law;

F. An award of attorneys' fees and costs pursuant to 42 U.S.C.A. § 1988 and to A.R.S. §§ 12-341.

G. Any and all other relief the Court deems just and proper.

H. Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated this 6th day of February, 2024.

**MARTIN & BONNETT, P.L.L.C.**

By: s/ Daniel L. Bonnett
Daniel L. Bonnett
Mirra L. Carrier
4647 N. 32nd. Street, Suite 185

16

Phoenix, AZ 85018
(602) 240-6900

*Attorneys for Plaintiff*